LAW OFFICES OF VINCENT E. BAUER
475 PARK AVENUE SOUTH, 25TH FLOOR
NEW YORK, NEW YORK 10016
Tel: 212-575-1517
Fax: 212-689-2726

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CIV 5163

---

BENJAMIN MADDEN and SEAN FLANAGAN

              Plaintiffs,

  - against -

READER'S DIGEST ASSOCIATION
INC. SEVERANCE PLAN

              Defendant.

COMPLAINT

---

Plaintiffs Benjamin Madden and Sean Flanagan, through their attorneys, The Law Offices of Vincent E. Bauer, seek redress under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132, to recover benefits due to them under the terms of the Reader's Digest Association Inc. Severance Plan, and for their complaint hereby state as follows:

The Parties

1. Plaintiff Benjamin Madden is and at all relevant times was a resident of Cos Cob, CT.

2. Plaintiff Sean Flanagan is and at all relevant times was a resident of Fairhaven, NJ.

3. Defendant Reader's Digest Association Inc. Severance Plan (the "Plan") is a plan formed under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),

by The Reader's Digest Association, Inc. ("Reader's Digest"), the principal offices of which are located in Pleasantville, NY.

## Venue and Jurisdiction

4. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under ERISA raise a federal question.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), because the events giving rise to the claim occurred in this district, and because Defendant is subject to personal jurisdiction in this district.

## Factual Background

6. Plaintiff Madden was employed by Reader's Digest between November 10, 2003 and March 19, 2007 in the position of publisher.

7. Plaintiff Flanagan was employed by Reader's Digest between September 11, 2006 and March 19, 2007.

8. Both Plaintiffs were eligible to receive severance pay benefits under the Plan if terminated under certain circumstances.

9. According to the Plan, terminated employees were entitled to severance pay benefits pursuant to a formula set forth therein. Pursuant to that formula, if otherwise eligible, Plaintiff Madden would have been entitled to 52 weeks, or approximately $250,000, in severance pay.

10. Pursuant to that formula, if otherwise eligible, Plaintiff Flanagan would have been entitled to 26 weeks, or approximately $95,000 in severance pay.

11. The Plan further provided that employees who were Discharged from Reader's Digest would not be eligible for severance benefits. "Discharge" was defined to include terminations "for reasons such as insubordination, unwillingness to handle assigned tasks or refusal to follow

corrective steps identified to improve performance, dishonesty, habitual lateness or absence, violation of company rules, non-performance or any other act [Reader's Digest considered] detrimental to its interests or employees."

12. The employment of Messrs. Madden and Flanagan was terminated on March 19, 2007.

13. On that same date, both employees received a letter from Cathy Marshall of Reader's Digest. The letters stated the purported reason for the terminations of the respective employees, an "unwillingness to handle assigned tasks". Each termination was based upon the alleged statement that, unless the employee in question received an increase in year-end bonus and a change in title, he could not be committed to his job.

14. Plaintiffs categorically deny making the alleged statements. Moreover, even if those statements were made, they would not give rise to a basis for the deprivation of severance benefits under the Severance Plan. Simply stated, the alleged statements cannot be reasonably interpreted to demonstrate an unwillingness to handle assigned tasks, or acts detrimental to Reader's Digest's interests.

15. Plaintiffs were both engaged in negotiations with new management concerning their respective roles with Reader's Digest at the time of the making of the alleged statements. In that context, the obvious import of the alleged statements is that Plaintiffs could not commit to staying with the Company absent the referenced concessions. Such negotiation posturing falls well short of a refusal to perform assigned tasks.

16. The above interpretation is further supported by the statement which Ms. Dillon claims was made by Plaintiff Madden. Specifically, Ms. Dillon alleged that Plaintiff Madden advised her that he was "uncomfortable" with his employment continuing at Reader's Digest without significant changes to his compensation. That alleged statement is clearly an indication that

Plaintiff Madden might resign his employment absent changes to his compensation, and not reflective of an unwillingness to perform assigned tasks while employed.

17. Similarly, the import of the alleged "commitment" statements is that Plaintiffs might resign their employment unless their concerns were addressed to their satisfaction. Such a message is in no way an expression of an unwillingness to perform assigned tasks. Therefore, Plaintiffs are entitled to receive severance payments pursuant to the Severance Plan.

18. By letter dated April 3, 2007, Plaintiffs sought review by the Plan Administrator, Lisa Cribari, Senior Vice President of Human Resources of Reader's Digest, of Reader's Digest's denial of severance to Plaintiffs.

19. By letters dated June 22, 2007, Ms. Cribari denied Plaintiffs' claim for benefits under the Plan.

20. Significantly, in that letter, Ms. Cribari concluded that a reasonable interpretation of the alleged statements was that Plaintiff would resign their employment with Reader's Digest if their requests for additional compensation were not met.

21. Pursuant to the Plan's terms, by letter dated August 1, 2007, Plaintiffs appealed Ms. Cribari's determination.

22. Curiously, that appeal was decided by Ms. Cribari herself, effectively undermining the purpose of the appeal. Not surprisingly, by letters dated September 26, 2007, Ms. Cribari upheld her own prior determination.

## FIRST CAUSE OF ACTION
## VIOLATION OF ERISA
## 29 U.S.C. §1132

23. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 22 as though fully set forth herein.

24. The Plan Administrator's denial of Plaintiffs' claims for severance pay under the Plan was erroneous, arbitrary, and capricious, and thus made in violation of ERISA.

25. As the direct and proximate result of Defendant's violation of that statute, Plaintiffs suffered damages, for which Defendant is liable, along with liquidated damages, interest and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court: award them unpaid benefits, interest, liquidated damages, and attorneys' fees in an amount to be determined at trial; and award Plaintiffs such other and further relief as it deems just and proper.

Dated: New York, NY
June 4, 2008

/s/

Vincent E. Bauer (VB-0794)
Law Offices of Vincent E. Bauer
475 Park Avenue South, 25th Floor
New York, New York 10016
Counsel to Plaintiffs